<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSEPH JOHNSON,<br>          *Defendant.* | Crim. No.: 13-00082 (KSH)<br><br><u>**OPINION**</u> |

**I.    Background**

Following his December 7, 2015 guilty plea to illegal possession of a firearm in violation of 18 U.S.C. § 922(g)(1), the Court sentenced defendant Joseph Johnson to 70 months' imprisonment followed by a three year term of supervised release. On December 7, 2020, Johnson was arrested for violating the terms of his supervised release, and after a hearing two weeks later, the Court sentenced him to a custodial term of 13 months. He is currently incarcerated at Hazelton FCI, located in Bruceton Mills, West Virginia, and is expected to be released in November 2021. In the pro se application presently before the Court (D.E. 60), Johnson has sought a reduction in sentence on compassionate release grounds due to the COVID-19 pandemic coupled with certain medical and familial circumstances. The government has opposed. (D.E. 64.)

## II.     Legal Standard

Once a term of imprisonment has been imposed, the Court may modify it only under very limited circumstances. *In re Morris*, 345 F. App'x 796, 797-98 (3d Cir. 2009) (citing 18 U.S.C. § 3582(c)); *see also United States v. Dillon*, 560 U.S. 817, 824 (2010) (same). Relevant here, 18 U.S.C. § 3582(c)(1) provides as follows:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> [. . .]
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

The United States Sentencing Commission's policy statement permits a court to reduce a term of imprisonment under § 3582(c)(1)(A) where extraordinary and compelling reasons warrant the reduction, the defendant is not a danger to the safety of any other person or to the community under 18 U.S.C. § 3142(g), and release would comport with consideration of the § 3553(a) factors. U.S. Sent'g Guidelines Manual ("USSG") § 1B1.13 (U.S. Sent'g Comm'n 2018); *accord United States v. Williams*,

2

2021 WL 37536, at *2 (D.N.J. Jan. 4, 2021) (McNulty, J.) (summarizing requirements for compassionate release under § 3582(c)(1)(A)).

Congress directed the Sentencing Commission to define the meaning of the statutory term "extraordinary and compelling reasons." *See* 28 U.S.C. § 994(t). The application notes to the Sentencing Commission's relevant policy statement provide that extraordinary circumstances exist in specified circumstances involving the defendant's medical condition, age, or family circumstances. USSG § 1B1.13, Application Note 1(A)-(C).

### III. Discussion

#### A. Administrative Exhaustion

Before considering the merits of a motion for compassionate release, a defendant must satisfy the exhaustion requirements outlined in § 3582(c)(1)(A). *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). As the Third Circuit has explained, "[a] prisoner may file a motion for compassionate release with the sentencing court 'after [he or she] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf **or** the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, **whichever is earlier**." *United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

In support of administrative exhaustion, Johnson claims that he sought compassionate release from the BOP after he submitted a "BP-9 form" to "Counselor

3

Stouffer to present to Warden Adams for Compassionate Release," on April 8, 2021. (D.E. 60-1 at 2.) The form contained the following request:

> I am requesting early release from my Judgment, per policy statement, 18 U.S.C. 3582(c)(1)(A), because I need to take care of my mother, I am the only care giver which qualify myself for "Compassionate Release" and I cannot exercise C.D.C. COVID-19 pandemic guidelines in this Federal Institute social distancing, keeping six ft away from other individuals, etc. I believe I also qualify for public law, home confinement.

(*Id.* at 3.) Johnson alleges that when presented with the request, Stouffer rejected receipt and advised: "You don't need that, take this form and sen[d] it directly to your Judge." (*Id.* at 2.) Based on the foregoing, Johnson asserts that his administrative remedies have been exhausted based on "futil[ity]." (*Id.*)

The government argues that the administrative remedies have not been exhausted here because the allegations concerning Stouffer's rejection of Johnson's request are insufficient to meet the requirements under § 3582(c)(1)(A). (D.E. 64, Opp. Br. 10-11.) Further, the government claims that Hazelton FCI has no record of his compassionate release request. (*Id.*)

The Court is satisfied that on the facts Johnson alleges and the specificity of the language on the BP-9 form, he has sufficiently demonstrated he petitioned the BOP to bring a motion for compassionate release on his behalf. Therefore, because 30 days have elapsed since April 8, 2021, the Court finds that he has exhausted his administrative remedies under § 3582(c)(1)(A) and that the Court has jurisdiction to

4

consider the present motion.

### B. Substantive Standards for Compassionate Release

Johnson fails to expressly argue that he suffers from medical conditions that put him at risk for serious illness or death while confined at Hazelton FCI because of the COVID-19 pandemic. He claims that the BOP prescribes medication for him, but omits what he is taking and why. A review of his medical records, which are attached as Exhibit C to the government's opposition brief (D.E. 64-3), shows that as of May 10, 2021, the BOP prescribed certain medications to control hypertension and Type 2 diabetes (*id.* at 2-5). The Court assumes, arguendo, that Johnson is seeking compassionate release based on an extraordinary and compelling medical condition.

A medical condition may give rise to extraordinary and compelling reasons where the defendant is:

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

USSG § 1B1.13, Application Note 1(A)(ii). The application notes also include a catchall provision. *See id.* at Application Note 1(D) ("As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and

compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).").

Although this policy statement has not been updated since the passage of the First Step Act and, as such, addresses compassionate release motions brought by the BOP rather than by the defendant personally, it supplies "useful guidance" in determining a defendant's eligibility for such relief while not constraining the Court's "independent assessment of whether extraordinary and compelling reasons warrant a sentence reduction under § 3582(c)(1)(A)." *United States v. Alexander*, 2020 WL 2507778, at *3 (D.N.J. May 15, 2020) (Wolfson, J.) (quoting *United States v. Rodriguez*, 451 F. Supp. 3d 392, 397 (E.D. Pa. 2020) (internal quotation marks omitted)).

Here, the government acknowledges Johnson's hypertension and diabetes, which the CDC individually recognizes as conditions that can make it more likely for a person to become severely ill from COVID-19. *See* CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (page last updated May 13, 2021) (last visited July 29, 2021). "Severe illness" from COVID-19, as indicated by the CDC, may result in hospitalization, intensive care, ventilation, or death. *Id.* Courts, including in this district, have looked to the CDC's classifications to inform their assessment of whether a defendant has shown extraordinary and compelling reasons for compassionate release based on COVID-19. *See, e.g.*, *United States v. Leondi*, 2021 WL 717361, at *2-3 (D.N.J. Feb. 23, 2021); United *States v. Newsuan*, 2021 WL

6

2856509, at *4 (E.D. Pa July 7, 2021). And with respect to Johnson's current medical condition, courts recognize hypertension and diabetes as presenting an increased risk of severe illness from COVID-19. *See, e.g.*, *United States v. Terry*, 2020 WL 3264086, at *4 (D.N.J. June 17, 2020) (McNulty, J.) (finding that the combination of hypertension and Type 2 diabetes placed defendant at a heightened risk).

From the medical records, however, the Court is satisfied that he is provided with appropriate medical care at Hazelton FCI. Specifically, BOP Health Services adjusts his blood pressure medication each month (*id.* at 2, 9, 16, 21) and classifies his Type 2 diabetes as "stable" due to his compliance with the prescribed medications (*id.* at 16). Generally, there is no indication that Johnson requires medical equipment, assistance with self-care, or other types of assisted living or personalized healthcare. (*See* D.E. 60 at 3.) Without more, his diagnosis of hypertension and diabetes does not warrant a reduction in sentence.

The Court also notes that Johnson was offered and refused a COVID-19 Pfizer-BioNTech vaccine on April 7, 2021 without providing any medical reason for doing so. (D.E. 64-3 at 71, 95.) In line with other courts in this district, the Court finds that his rejection of a COVID-19 vaccination without explanation weighs against a finding of extraordinary and compelling circumstances for his early release. *See, e.g.*, *United States v. Muntasir*, 2021 WL 2201651, at *2 (D.N.J. May 27, 2021) (Vazquez, J.) (denying compassionate release to an inmate at Hazelton FCI who refused a COVID-19 vaccine without explanation, stating that the "[d]efendant is

within his rights to refuse the vaccine, but any corresponding argument that he must be released because of potential complications were he to contract the virus rings hollow"); *see also United States v. Baeza-Vargas*, 2021 WL 1250349, at *2-3 (D. Ariz. Apr. 5, 2021) (collecting cases and noting that district courts across the country "have ruled with consistency that an inmate's denial of a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances").

As for the present conditions inside Hazelton FCI, Johnson contends that he cannot exercise the current public health guidelines governing social distancing. In addressing similar arguments, courts in this district have held that "the mere existence of COVID-19 at [a BOP facility] is insufficient to show 'extraordinary and compelling reasons' for release." *United States v. Ludwikowski*, 2020 WL 7258591, at *2 (D.N.J. Dec. 10, 2020) (Kugler, J.); *see also Raia*, 954 F.3d at 597. While the BOP reports that 132 inmates and 79 staff have recovered from COVID-19 and one inmate has died at the institution, Hazelton FCI is reporting no positive inmate or staff cases as of the date of this writing. *See* BOP, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited July 29, 2021). Moreover, 388 staff members and 1,984 inmates have been fully vaccinated, placing it fifth among the 106 reporting federal facilities in terms of the highest number of fully inoculated inmates. *See* BOP, *COVID-19 Vaccine Implementation*, https://www.bop.gov/coronavirus/ (last visited July 29, 2021).

Based on the foregoing, Johnson has failed to establish extraordinary and compelling reasons that would justify his early release before the scheduled date of November of this year.

Johnson also argues that early release is justified because his mother requires special medical attention and he was her only caregiver at the time he was incarcerated. As the Court stated earlier, a defendant's familial circumstances may warrant compassionate release in limited circumstances, specifically in the event of:

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

USSG § 1B1.13, Application Note 1(A)(C). *See United States v. Lowery*, 2021 WL 1851903, at *2 (D.N.J. May 7, 2021) (Salas, J.) (stating "certain family circumstances exist where the defendant would be the only available caregiver for his or her minor child, spouse, or registered partner").

While the government correctly points out that the application note only lists care for a child or spouse as qualifying family circumstances for compassionate release purposes (*see* Opp. Br. 18 n.4), the Court will consider the situation surrounding the care of Johnson's mother, and in doing so, "must consider whether these particular circumstances are extraordinary and compelling in their own right." *United States v. Dunich-Kolb*, 2020 WL 6537386, at *7 (D.N.J. Nov. 5, 2020) (McNulty, J.) (considering

9

a domestic situation that "does not precisely match the ones enumerated in the Guideline or policy statements.").

On December 22, 2020, when the Court sentenced Johnson for violating the terms of his supervised release, he argued for a noncustodial sentence because he was providing medial attention that his mother needed.  He indicated that she had mobility issues and required an oxygen mask, and that he assisted her with everyday tasks such as cooking, cleaning, and transporting her to medical appointments.  The record reflects that he has three siblings who are "all living" and in "good health." (D.E. 64-3 at 38.)  Further, Johnson flagrantly violated the terms of supervised release during the period that he was purportedly caring for his mother.

Moreover, under § 3582(c)(1)(A), the Court must consider the sentencing factors under 18 U.S.C. § 3553(a) to the extent applicable, *see United States v. Pawlowski*, 967 F.3d 327, 329-31 (3d Cir. 2020), and whether reducing the defendant's custodial sentence would pose a danger to the safety of any other person or to the community under 18 U.S.C. § 3142(g).

The Violation Petition (DE 64-2) that led to Johnson's sentence speaks volumes on that issue.  Supervision began on December 15, 2017.  The petition alleges that Johnson remained unemployed since on or about September 1, 2018 "with no viable excuse."  (*Id.*)  He tested positive for illicit drug use on multiple occasions during 2019 and was referred to a substance abuse facility to which he never reported.  He failed to report to his Probation Officer in May, July, and August

10

2019.  On August 28, 2019, in a face-to-face interview, his Probation Officer directed him to report every Wednesday.  Johnson failed to report on Wednesday September 18, 2019 and successive Wednesdays thereafter.  On this repeated record of violations, his Probation Officer petitioned the Court to issue a warrant for Johnson's arrest on October 31, 2019.  That warrant was executed in December 2020.  For the entire period between warrant and arrest, Johnson's whereabouts were unknown and he made no effort to contact his Probation Officer or demonstrate any adherence to his status as a person under supervision.  It was on this record of consistently flouting the most basic requirements of supervised release that the Court imposed a sentence at the top of the guidelines range.  The sentencing factors and considerations expressed in 18 U.S.C. § 3142(g) when applied to Johnson's conduct on supervision strongly militate against a reduction in sentenced.

   For the reasons set forth above, Johnson's motion is denied.  An appropriate order will issue.


Dated:  July 29, 2021                        /s/ Katharine S. Hayden
                                             Katharine S. Hayden, U.S.D.J.